1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10
11   GARY L. BEAVERS,                        Case No. 8:21-cv-01670-JVS-KES
12             Plaintiff,
13        v.                                 REPORT AND RECOMMENDATION
                                             OF U.S. MAGISTRATE JUDGE
14   ORANGE CTY. JAILS, et al.,
15             Defendants.
16
17
18        This Report and Recommendation ("R&R") is submitted to the Honorable
19   James V. Selna, United States District Judge, pursuant to the provisions of 28
20   U.S.C. § 636 and General Order 05-07 of the United States District Court for the
21   Central District of California.

22                                    **I.**
23                            **INTRODUCTION**
24        On August 10, 2021, Gary L. Beavers ("Plaintiff" or "Beavers"), an inmate at
25   San Quentin state prison, constructively filed a pro se civil rights complaint under
26   42 U.S.C. § 1983, alleging that while detained at Orange County Central Men's Jail
27   ("OC Jail"), staff at OC Jail violated his constitutional rights.  (Dkt. 1.)  After the
28   Court dismissed the complaint with leave to amend and, subsequently, dismissed

                                      1

1 | the first and second amended complaints with leave to amend (see Dkts. 4, 9, 11),
2 | Plaintiff filed a third amended complaint ("TAC") on March 23, 2022.  (Dkt. 12.)

3 |       As explained further below, most of the claims in the TAC are untimely or
4 | fail to state a claim and should be dismissed, some with leave to amend but most
5 | without leave to amend.

6 | **II.**

7 | **LEGAL STANDARD**

8 |       Under 28 U.S.C. § 1915A(a), the Court must screen any "complaint in a civil
9 | action in which a prisoner seeks redress from a governmental entity, or from an
10 | officer or employee of a governmental entity."  The Court must dismiss the
11 | complaint if it "is frivolous, malicious, or fails to state a claim upon which relief
12 | may be granted" or "seeks monetary relief from a defendant who is immune from
13 | such relief."  28 U.S.C. § 1915A(b).  A complaint may fail to state a claim for two
14 | reasons: (1) lack of cognizable legal theory; or (2) insufficient facts under a
15 | cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th
16 | Cir. 1990) (as amended).  In determining whether a complaint states a claim on
17 | which relief may be granted, its allegations of material fact must be taken as true
18 | and construed in the light most favorable to plaintiff.  Lazy Y Ranch Ltd. v.
19 | Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

20 |       Nevertheless, the Court may dismiss a claim as factually frivolous when it
21 | lacks an arguable basis in law or fact or embraces fanciful factual allegations.
22 | Neitzke v. Williams, 490 U.S. 319, 325 (1989).  A complaint that is totally
23 | incomprehensible may be dismissed as frivolous because it is without arguable
24 | basis in law.  See Jackson v. Arizona, 885 F.2d 639, 641 (9th Cir. 1989).  Further, a
25 | claim can be dismissed where a complete defense is obvious on the face of the
26 | complaint.  Franklin v. Murphy, 745 F.2d 1221, 1228 (9th Cir. 1984).  If the
27 | complaint appears to fail to state a claim based on the statute of limitations, the
28 | screening court must ensure that the plaintiff has an opportunity to present

arguments that the statute of limitations either has not run or that equitable tolling applies.  See Cervantes v. City of San Diego, 5 F.3d 1273, 1276–77 (9th Cir.1993) (dismissal on statute of limitations grounds disfavored where equitable tolling may apply); see, e.g., Givens v. City & County of San Francisco, 269 Fed. Appx. 685 (9th Cir.2008); Cooper v. Nielson, 194 F.3d 1316 (9th Cir.1999).

Although the scope of review generally is limited to the contents of the complaint, the Court may also consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice. United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  Exhibits that contradict the allegations of a complaint may fatally undermine the complaint's allegations. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended by 275 F.3d 1187 (2001) (noting that a plaintiff can "plead himself out of a claim by including … details contrary to his claims").

If the Court finds that a complaint should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend.  Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc).  Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se.  Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995).

### III.

### SUMMARY OF THE ALLEGATIONS.

Plaintiff was detained at OC Jail from 2014 to 2018, both pre- and post-trial. According to the records in Plaintiff's criminal case, he was arraigned on August 7, 2014, and charged with sexual offenses against minor victims.  After representing himself, Plaintiff was found guilty by a jury in September 2017 and sentenced to multiple indeterminate life sentences.  People v. Beavers, Orange County Superior

Court Case No. 14WF2967 (2014).[1]  Plaintiff left OC Jail in 2018 (TAC at 5) to serve his sentence in state prison while pursuing an appeal.

While detained at OC Jail, Plaintiff alleges that staff (a) threatened and/or assaulted him, (b) failed to protect him from violence at the hands of other dangerous inmates, (c) needlessly moved him about the jail for extended periods of time, (d) denied him medical care, clean drinking water, commissary, and recreational time, (e) interfered with his ability to defend the criminal charges against him and to bring civil lawsuits, and (f) failed to respond adequately to his grievances.  (See generally TAC.)

**A.      The Related 2017 Action.**

In January 2017, Plaintiff, represented by counsel, filed a § 1983 complaint against the County of Orange ("County"), the Orange County Sheriff, and Orange County Sherriff's Department ("OSCD") Deputies Maracine, Mederes, Edgerton, Kocher, and Espinosa based on claims of excessive force, failure to protect, and denial of medical care while Plaintiff was at OC Jail from January 2015 to October 2016.  (Beavers v. County of Orange, et al., Case No. 8:17-00100-JVS-KES (C.D. Cal., filed January 22, 2017) ("2017 Action"), Dkt. 1.)[2]

District Judge Guilford dismissed the complaint with leave to amend.  (Id., Dkt. 41.)  Plaintiff amended his complaint in September 2017 and voluntarily dismissed the Sheriff and Deputies Maracine and Espinoza but added claims based on events that occurred from December 2016 through February 2017.  (Id., Dkt. 43.)

---

[1] The Court takes judicial notice of the records in People v. Beavers, Orange County Superior Court Case No. 14WF2967 (2014).  See Fed. R. Evid. 201(b)(2); Harris v. Cty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012).

[2] The Court also takes judicial notice of the records in Beavers v. County of Orange, et al., Case No. 8:17-00100-JVS-KES (C.D. Cal., filed January 22, 2017). Supra, n.1.

4

The individual defendants moved for summary judgment as to the January 2015 through October 2016 claims, and the County moved for summary judgment as to the <u>Monell</u>[3] claims against it.  (<u>Id.</u>, Dkt. 71.)  In ruling on the summary judgment motion, Judge Guilford summarized some of the undisputed facts:

> [] **January 22, 2015**
>
> Until January 2015, Beavers had been assigned to live in the jail's "C Mod."  But in January 2015, Beavers was reassigned to "B Mod," even though Beavers protested the reassignment because another B Mod detainee, Gerry Byrne, had been threatening Beavers. On or about January 22, 2015—Beaver's second day in B Mod— Byrne punched Beavers in his left eye.  Beavers says Byrne threatened to kill him if he reported the attack.  Because of the punch, the left side of Beavers's face was swollen and bruised, and his eye was blood red.  Later that day, he told Defendant Kocher that he had slipped in the shower.  After his 4:30 a.m. breakfast the next day, Beavers asked Deputy Espinosa if he could receive medical treatment for his injuries, still claiming to have fallen in the shower.  Espinosa "obtained medical care" for Beavers.  (<u>See</u> Fact 8, Dkt. No. 80-1 at 4.)  A nurse asked what happened to Beavers's eye.  Beavers told the nurse he'd been punched without giving the name of his attacker.  The nurse told Beavers he needed to see a doctor, and the nurse further said she would have a doctor see him when the doctors arrive at 8 a.m. Having seen the nurse, Beavers returned to Espinosa and informed him that he didn't feel safe returning to Mod B.  Then, at around 6 a.m., Espinosa handcuffed Beavers to a bench.  Within the following two hours, Beavers urinated himself.  At some point in the two hours

---

[3] Referring to <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978).

1    after that, a deputy shifted Beavers's handcuffs so that only one

2    handcuff was chained to the bench.

3    Around 7 a.m., Kocher "made a comment to [Beavers] over the

4    intercom." (Fact 61, Dkt. No. 80-1 at 37.)  Kocher came over to talk

5    to Beavers in person at around 6 p.m.  Kocher told Beavers that he

6    would be sent to "Classification" in the Inmate Reception Center (or

7    "IRC") to be assigned a new Mod.  About 60 to 90 minutes later, an

8    unidentified deputy took Beavers to Classification.  Beavers remained

9    in the Classification holding cell for about another 6 hours.

10   Beavers received treatment for the injury to his left eye about three

11   weeks later.

12  (2017 Action, Dkt. 86 at 1-2.)

13   Jude Guilford granted the motion in part, dismissing Plaintiff's claim against

14  Deputy Kocher for failing to protect Plaintiff from Mr. Byrne because:

15   [A]lthough Beavers had protested his assignment to B Mod in the first

16   place, Kocher requested the transfer because Beavers had previously

17   said he didn't feel safe in C Mod.  (See Kocher Decl., Dkt. No. 71-5 at

18   ¶ 3.)  Then on January 22, 2015, Beavers didn't tell Kocher he'd been

19   attacked by Byrne.  And Kocher sent Beavers to Classification after

20   Beavers finally said he'd been attacked.  Beavers thus hasn't met his

21   burden to show that Kocher put Beavers at substantial risk of

22   suffering serious harm or that Kocher failed to take reasonable

23   available measures to avoid risks of harm to Beavers.

24  (2017 Action, Dkt. 86 at 8.)  Judge Guilford also dismissed Plaintiff's Monell

25  claims against the County because Plaintiff "hasn't submitted any evidence at all to

26  support his claim against the County." (Id. at 12.)  Judge Guilford's dismissal of

27  these claims was affirmed by the Ninth Circuit.  (Id., Dkt. 97.)

28   At present, the 2017 Action is set to go to trial on November 8, 2022.  (Id.,

1 | Dkt. 127.)

2 | **B.    The Instant Action.**

3 |   Despite being represented by counsel in the 2017 Action, Plaintiff filed the

4 | instant action pro se.  The TAC is difficult to comprehend and consists mostly of

5 | disjointed stream-of-consciousness statements.  Nevertheless, the Court

6 | understands the allegations thusly, in roughly chronological order:

7 |   The TAC names 15 Defendants, which includes: (a) OCSD Deputies Phillips,

8 | Zalaya, Bright, Maracine, Gilbert, Thornton, and Gibbs; Sergeants Begosian and

9 | Wallewa; and Captains D'Auria, and Coppack; (b) a nurse at OC Jail, "Nurse Ava";

10 | (c) the OCSD Chief Information Officer Kirk Wilkerson; (d) a contractor that

11 | provided recording services for phone calls at OC Jail, "Global Tel Link"; and

12 | (e) the County (erroneously sued as "Orange County Jails").  (TAC at 4.)

13 |   In January 2015, Plaintiff was reassigned to the same unit as Gerry Byrne, a

14 | dangerous inmate who had previously threatened Plaintiff.  Despite Plaintiff's

15 | protests, Deputy Thornton forced Plaintiff into the same cell as Mr. Byrne.  The

16 | next day, Mr. Byrne punched Plaintiff in the face "resulting in severe damage" to

17 | his eye and "constant ringing" in Plaintiff's ears.  (Id. at 11, 59.)  Plaintiff

18 | eventually saw a doctor six to eight weeks later.  (Id. at 16, 17.)

19 |   In 2015, Deputy Phillips frequently "targeted" Plaintiff by writing him up for

20 | false violations, denying him phone calls, making physical threats, placing

21 | dangerous inmates in his cell, and denying him clean drinking water.  (Id. at 35.)

22 | Plaintiff filed a grievance regarding his phone call problems with Sergeant

23 | Begosian.  At the hearing, Sergeant Begosian was "belligerent" and told Plaintiff

24 | that, according to the deputies, he was getting his calls.  Plaintiff spent the night in

25 | the "loop in retaliation for the grievance," and Sergeant Begosian directed other

26 | deputies to "toss" Plaintiff's property and issue a "write up" for having more than

27 | three pencils.  Deputy Phillips continued to deny Plaintiff phone calls, and Plaintiff

28 | continued to file grievances that were ignored by Sergeant Begosian.  (Id. at 21.)

1   Plaintiff also reported Deputy Phillips' conduct and Sergeant Begosian's failure to

2   respond to his grievance to Captain D'Auria on November 16, 2015, but Captain

3   D'Auria never responded.  (Id. at 22, 35.)

4         On May 29, 2015, Plaintiff was "appointed 'Pro Per'" status in his criminal

5   case, which he believes "entitled [him] to non-monitored, non-recorded phone

6   calls" at OC Jail.  Plaintiff alleges, however, that Deputy Phillips listened to a

7   phone call in which Plaintiff discussed a "motion" for his criminal case with his

8   son.  Deputy Phillips also told Plaintiff's "expert witnesses" who came to the jail to

9   work on Plaintiff's case that Plaintiff did not wish to see them but then never told

10  Plaintiff that the witnesses had come.  (Id. at 18.)

11        While Plaintiff was at court, Deputy Maracine[4] entered Plaintiff's cell and

12  took a "42 page handwritten 'Suppression Motion'" that "could have been

13  dispositive of [Plaintiff's criminal] case."  (Id. at 12.)  Though it is unclear when

14  this occurred, , it must have occurred before September 2017, the date of Plaintiff's

15  conviction.

16        In October 2015, Plaintiff's doctor ordered surgery on Plaintiff's rotator cuff.

17  It was up to Nurse Ava to schedule the surgery, but the surgery was never

18  scheduled.  (Id. at 16, 22-23.)[5]

19        In October 2016, Deputy Edgerton assaulted Plaintiff at the hospital. Plaintiff

20  sent a grievance regarding the incident to Sergeant Wallewa, who had taken

21  _____

22        [4] This is the same Deputy Maracine who was named but dismissed in the
    2017 Action.

23

24        [5] In January 2018, Plaintiff filed a declaration opposing defendants' motion
    for summary judgment in the 2017 Action.  (2017 Action, Dkt. 76.)  At that time,

25  he declared, "I was finally examined by Dr. Shokes, an Orthopedic Surgeon in
    August of 2016.  The examination revealed that I had a damaged rotator cuff, that

26  would not completely heal without surgery.  Dr. Shokes told me that he would
    schedule surgery immediately.  To date, the surgery has not been scheduled."  (Id.

27  ¶ 34.)

28

Sergeant Begosian's place.[6]   The next morning, Plaintiff was written up for assaulting Deputy Edgerton.  Plaintiff was found "guilty" of the write up and taken to the hole.  This was done by Sergeant Wallewa in order to send a message that Plaintiff "was not to write up the deputies or retaliation would be swift."  (Id. at 21.)

On November 8, 2017, Deputy Phillips asked Plaintiff for "a blow job" in exchange for letting Plaintiff keep his file folder, but no sexual contact occurred between Plaintiff and Deputy Phillips.  On the same day, "four or five of Deputy Phillip's friends," including Deputy Bright, came to Plaintiff's cell.  Deputy Bright grabbed Plaintiff by the thumb and pulled his arm upward behind his back, forcing Plaintiff to the floor.  Deputy Bright then stood on Plaintiff's pelvis.  (Id. at 13-15.)  On November 10, 2017, Plaintiff sent Captain Coppack a letter describing these incidents, but Captain Coppack did not respond or notify authorities.  (Id. at 22, 38.)

Deputy Zalaya frequently sent Plaintiff on "round trips," which entailed telling Plaintiff to gather all of his belongings into bags, sending him to the "loop," placing him in a holding cell on a concrete bench for 24 hours, and "tossing" his belongings.  Deputy Zalaya did this to Plaintiff four nights in a row.  On the last trip, Plaintiff "was so … delirious from exhaustion that [he] fell down a flight of steel stairs."  (Id. at 13.)  Deputy Zalaya took "many of [Plaintiff's] legal files" after he fell, including some police reports, and later spread the files around the dayroom for other inmates to read.  (Id. at 18.).  Deputy Zalaya also refused to help Plaintiff or get him medical attention at first.  Eventually, Deputy Zalaya had a nurse come and examine Plaintiff.  Deputy Zalaya then took Plaintiff by wheelchair to a ten-

---

[6] In Plaintiff's 2018 declaration (supra, n.5), he declared that he "wrote a grievance regarding this incident" and that Sgt. Wallewa "came to my cell asking about the incident."  (2017 Action, Dkt. 76 ¶¶ 46-47.)

1  foot corridor between the "loop" and "J Mod," where he told a "black porter" who

2  was sitting there to leave.  Standing behind Plaintiff, Deputy Zalaya asked Plaintiff

3  if he "was ready for [his] beating."  Plaintiff replied "yes."  Deputy Zalaya did not

4  assault Plaintiff, but merely laughed and continued on.  (Id. at 13.)  Plaintiff does

5  not allege when this occurred, but given that it involves Plaintiff's legal paperwork

6  related to his self-representation in his criminal case, it must have happened prior to

7  September 2017.

8        Deputies Maracine and Gilbert "went out of their way" to deny Plaintiff

9  exercise and commissary by writing Plaintiff up and "conveniently" losing his

10 commissary slips.  (Id. at 14.)  The TAC does not allege more specific facts about

11 when or how these denials occurred.

12       Sometime during Plaintiff's "final weeks" at OC Jail, Deputy Gibbs entered

13 Plaintiff's cell and "tossed" it.  Deputy Gibbs announced that Plaintiff needed to

14 experience the "fists of love."  He then put Plaintiff "in chains so tight that they dug

15 into" Plaintiff's wrists and torso.  Deputy Gibbs took Plaintiff to the "loop" and

16 took from Plaintiff's cell "everything that would help [him] prepare for this [civil]

17 suit," including "over 1,00 pages" of "personal notes, copies of grievances and

18 other evidence documenting wrongdoing."  Deputy Gibbs said that if Plaintiff

19 supplied him with stamped envelopes, he would return the documents to Plaintiff

20 10 pages at a time.  (Id. at 11, 19.)  At the time, Plaintiff already had counsel

21 representing him in the 2017 Action.

22       Global Tel Link contracted with OC Jail to provide recording services for

23 inmates' phone calls.  The calls were to be saved and archived for five years.  Some

24 unspecified calls "were critical" to Plaintiff's defense in his criminal case and

25 "would have been damaging to the prosecution and would have shown clear

26 violations of using an informant with a person represented by counsel."  (Id. at 23.)

27 During Plaintiff's criminal proceedings, Wilkerson and "a stream of officers

28 testified in court that the recordings were erased after one year."  (Id. at 19.)

Plaintiff conclusorily alleges that the County was "complicit" with and "well aware of" all the OCSD actions in allegedly violating Plaintiff's constitutional rights.  (Id. at 24, 32.)

Based on these allegations, the Court construes the TAC as asserting the following causes of action against:

(1)   Deputy Phillips for: (a) excessive force; (b) failure to protect; (c) retaliation; (d) interference with the right to self-representation; and (e) inhumane conditions of confinement;

(2)   Deputy Zalaya for: (a) excessive force; (b) interference with the right to self-representation; and (c) inadequate medical care;

(3)   Deputy Bright for excessive force;

(4)   Deputy Maracine for: (a) interference with the right to self-representation; and (b) inhumane conditions of confinement;

(5)   Deputy Gilbert for inhumane conditions of confinement;

(6)   Deputy Thornton for failure to protect;

(7)   Deputy Gibbs for: (a) excessive force; and (b) deprivation of access to the courts;

(8)   Nurse Ava for inadequate medical care;

(9)   Kirk Wilkerson for interference with the right to self-representation;

(10)   Global Tel Link for interference with the right to self-representation;

(11)   Sergeant Wallewa for retaliation;

(12)   Sergeant Begosian for retaliation;

(13)   Captain D'Auria for supervisory liability;

(14)   Captain Coppack for supervisory liability; and

(15)   The County for Monell liability on each above-listed claim.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.

## DISCUSSION

**A.    Untimely Claims.**

Plaintiff brings all of his claims under § 1983.  The statute of limitations for § 1983 claims is borrowed from the analogous state statute of limitations for personal injury actions.  In California, that limitation period is two years.  See Cal. Civ. Proc. Code § 335.1; Silva v. Crain, 169 F.3d 608, 610 (9th Cir.1999).  The accrual date of a § 1983 cause of action is a question of federal law.  Wallace v. Kato, 549 U.S. 384 (2007).  Typically, accrual occurs "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."  Id. (internal citations and quotations omitted).

**1.    Even Assuming Statutory Tolling Applies, Most of Plaintiff's Claims Are Untimely.**

Federal courts apply the forum state's tolling law.  Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004). One potentially applicable tolling statute is section 352.1 of the California Code of Civil Procedure, which provides in relevant part:

If a person entitled to bring an action ... is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years.

Cal. Civ. Proc. Code § 352.1(a).  Pursuant to section 352.1(a), the two-year statute of limitations applicable to § 1983 claims is tolled if the plaintiff was "imprisoned on a criminal charge" or "under the sentence of a criminal court for a term less than for life" when his claim accrued.  Id.

Courts are conflicted as to whether this tolling provision applies to claims that accrued while the plaintiff was a pretrial detainee, like Plaintiff was for most of his time at OC Jail.  The Ninth Circuit has held that it does, Elliott v. City of Union

12

City, 25 F.3d 800 (9th Cir. 1994), but the California Court of Appeal has held more recently that it does not, Austin v. Medicis, 21 Cal. App. 5th 577 (2018).  District courts are split on whether to follow Elliott or Austin.  See, e.g., Baros v. Ramirez, No. 517CV00948RSHK, 2019 WL 3849171, at *2 (C.D. Cal. June 5, 2019) ("Elliott remains good law in the Ninth Circuit ... unless and until the Ninth Circuit holds otherwise.") (citing Hart v. Massanari, 266 F.3d 1155, 1170-71 (9th Cir. 2001)); Kakowski v. Cty. of Sacramento, Case No. 19-cv-0656-JAM (KJN), 2020 WL 1046564, at *4 (E.D. Cal. Mar. 4, 2020) ("Because the Ninth Circuit has not addressed the scope of § 352.1(a)'s applicability after the Austin decision was issued in 2018, Elliott remains precedent in the Ninth Circuit."); Sekerke v. Hoodenpyle, Case No. 19-cv-35-WQH, 2020 WL 914885, at *5 (S.D. Cal. Feb. 26, 2020) (declining to follow Elliott because federal courts "must follow the decision of the intermediate appellate court of the state.") (citing to Briceno v. Scribner, 555 F.3d 1069, 1080 (9th Cir. 2009)); Arreola v. Cty. of Fresno Pub. Def.'s Office, Case No. 12-cv-272-AWI (SAB), 2020 WL 1169222, at *6 (E.D. Cal. Mar. 11, 2020) (following Austin and holding that "section 352.1 does not apply to an individual who is in pretrial custody in a county jail at the time his claims accrued because he is not 'imprisoned on a criminal charge' within the meaning of section 352.1"); Garcia v. Corral, Case No. 18-cv-04730-PJH, 2019 WL 931754, at *3 (N.D. Cal. Feb. 26, 2019) ("This court finds that Elliott is distinguishable from this case, and the court agrees with the state court reasoning that regardless, Elliott does not apply."); Lockett v. Cty. of Los Angeles, Case No. 18-cv-5838-PJW, 2018 WL 6842539, at *2 (C.D. Cal. Oct. 25, 2018) ("This Court is bound by the state appellate court's interpretation of state law.").

Without deciding this issue but giving Plaintiff the benefit of statutory tolling for purposes of PLRA screening, his claims that accrued prior to August 10, 2017 (i.e., four years before the complaint's constructive filing date), are untimely unless Plaintiff is entitled to some other form of tolling.  Based on the allegations of the

13

complaint, it is clear that the following claims fall into this category:

    (1)    Deputy Phillips for: (b) failure to protect; (c) retaliation;
             (d) interference with the right to self-representation; and (e) inhumane
             conditions of confinement;

    (2)    Deputy Zalaya for: (a) excessive force; (b) interference with the right
             to self-representation; and (c) inadequate medical care;

    (4)    Deputy Maracine for (a) interference with the right to self-
             representation;

    (6)    Deputy Thornton for failure to protect;

    (8)    Nurse Ava for inadequate medical care;

    (9)    Kirk Wilkerson for interference with the right to self-representation;

    (10)    Global Tel Link for interference with the right to self-representation;

    (11)    Sergeant Wallewa for retaliation;

    (12)    Sergeant Begosian for retaliation;

    (13)    Captain D'Auria for supervisory liability; and

    (15)    The County for Monell liability based on the time-barred claims.

**2.    Plaintiff is Not Entitled to Equitable Tolling.**

"Under California law, a plaintiff must meet three conditions to equitably toll a statute of limitations: (1) defendant must have had timely notice of the claim; (2) defendant must not be prejudiced by being required to defend the otherwise barred claim; and (3) plaintiff's conduct must have been reasonable and in good faith." Fink, 192 F.3d at 916 (internal quotation marks omitted). Though not impossible, "[b]ecause the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it is not generally amenable to resolution" at the pleading stage. Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206 (9th Cir. 1995); see Fink v. Shedler, 192 F.3d 911 (9th Cir. 1999) (affirming dismissal of § 1983 suit at pleading stage as untimely).

The Court presently lacks sufficient information to analyze elements (1) and

1  (2).  The Court, therefore, focuses its analysis on element (3) which, if Plaintiff

2  cannot establish, bars equitable tolling.

3       In an apparent effort to justify his late filing as reasonable, Plaintiff pleads

4  that his conditions of confinement at OC Jail inhibited his ability to pursue

5  litigation.  He alleges that in his "final weeks" at OC Jail, Deputy Gibbs took

6  "everything that would help [him] prepare for this suit," including "over 1,00

7  pages" of "personal notes, copies of grievances and other evidence documenting

8  wrongdoing."  (TAC at 11, 19.)  Plaintiff alleges that he did not learn Deputy

9  Thornton's name until 2018.[7]  (Id. at 9.)  He also alleges generally that staff at OC

10 Jail constantly threatened him with and carried out retaliation for filing complaints

11 and grievances, and that his library privileges were sometimes revoked.  (See

12 generally, id.)  After leaving OC Jail sometime in 2018, Plaintiff spent seven

13 months at Wasco State Prison, where he had no law library privileges and only one

14 15-minute phone call per month.  After Plaintiff "got to a normal prison," he alleges

15 that he "began putting together a chronology of [Defendants'] actions, but [he]

16 lacked the names and dates."  Then in March 2020, "the prison went into Covid

17 lockdown and the library closed until June 2021."  (Id. at 10.)  While these

18 allegations might support granting equitable tolling under certain circumstances,

19 they do not here, given Plaintiff's active pursuit of other related litigation filed late

20 in January 2017 in which he was represented by counsel.

21      In Fink, 192 F.3d 911, the Ninth Circuit affirmed the dismissal of time-

22 barred § 1983 claims at the pleading stage, because the facts alleged or subject to

23 judicial notice showed that Fink, an inmate entitled to two years of statutory tolling,

24 was not entitled to additional equitable tolling.  Fink had filed "at least one other

25 prisoner § 1983 action pending in the district court [referred to herein as Gomez]

26

27      [7] Plaintiff named Doe Defendants in the 2017 Action, which shows that he
28 knew how to sue unknown defendants.

15

1   while the statute of limitations for the instant claims was running." Id. at 913.  Fink

2   initially sought to bring the claims in the dismissed lawsuit by amendments in

3   Gomez, but after several failed attempts, he filed the second action.  Id.  Rather than

4   finding that these facts showed a good faith attempt to pursue his claims in an

5   alternative forum, the Ninth Circuit rejected Fink's equitable tolling argument:

6          This claim is completely unrelated and does not arise from the same

7          transaction or occurrence as the Gomez claims.  In his proposed

8          amendments to Gomez, Fink sought to add seventeen new defendants

9          and four new causes of action ….  He sought to do so in the midst of

10         summary judgment proceedings in that case.  Motions to amend were

11         denied in Gomez at least twice before the statute of limitations ran on

12         the instant Eighth Amendment claims ….  If anything, Fink's efforts

13         demonstrate his subjective knowledge — well within the statutory

14         limitations period — that he had possible section 1983 claims based

15         upon the November 1993 medical care.  The district court properly

16         refused to equitably toll the statute of limitations.

17  Id. at 916-17.

18         Similarly, in Pamer v. Lucine, 310 F. App'x 155 (9th Cir. 2009), the Ninth

19  Circuit upheld a grant of summary judgment on statute of limitations ground,

20  finding that a California inmate asserting § 1983 claims was not entitled to

21  equitable tolling in addition to statutory tolling.  The district court did not abuse its

22  discretion in ruling that "equitable tolling was unwarranted because Pamer was able

23  to engage in various [litigation] activities during the time he contended he was

24  physically and mentally unable to file suit."  Id. at 156; see also Hubbs v. Cty. of

25  San Bernardino, No. 8-989, 2011 WL 13143499, at *8 (C.D. Cal. May 17, 2011),

26  report and recommendation adopted as modified, 2011 WL 13143500 (C.D. Cal.

27  Sept. 28, 2011), aff'd, 519 F. App'x 468 (9th Cir. 2013) (denying equitable tolling

28  to civil detainee because of his "demonstrated ability to litigate multiple" other

1  matters during the limitations period, and collecting similar cases).

2      Likewise, the Court finds Plaintiff's allegations are insufficient to warrant

3  years of equitable tolling in light of Plaintiff's ability to file and litigate the related

4  2017 Action through counsel.  Plaintiff filed that § 1983 lawsuit against the County

5  and various OCSD deputies (at least one of which is also a named Defendant here)

6  in January 2017—well within the limitations period for the claims now alleged.

7  (2017 Action, Dkts. 1, 43.)  The claims in the 2017 Action are for, inter alia,

8  excessive force, failure to protect, and failure to provide appropriate medical care

9  while Plaintiff was detained at OC Jail.  (Id.)  Some of the allegations in the 2017

10 Action involve the same incidents as the instant case, e.g., the January 2015

11 incident involving Gerry Byrne and subsequent denial of medical care.  (See id.,

12 Dkt. 43 ¶¶ 13-29.)  Other claims involve similar general allegations general, e.g.,

13 retaliation for filing grievances, denial of medical care, and municipal liability

14 against the County.  (See id., Dkt. 43 ¶¶ 15, 38, 65, 92-106.)

15     Further, Plaintiff has been continuously represented by counsel in the 2017

16 Action.  In September 2017, Plaintiff amended his complaint in the 2017 Action

17 and added claims for two separate incidents that occurred after filing the 2017

18 Action's complaint.  (Compare id., Dkt. 1 with Dkt. 43 ¶¶ 56-85 [adding allegations

19 of events in January 2017 and February 2017.)  It is clear that that Plaintiff was

20 aware of the pre-August 2017 incidents described in TAC well before the

21 limitations period expired.  Fink, 192 F.3d at 916-17.

22     In short, Plaintiff pursued the 2017 Action within the limitations period, and

23 nothing he alleges suggests that he could not have done the same with the claims

24 now alleged in the TAC.  See Stoll v. Runyon, 165 F.3d 1238, 1242 (9th Cir.1999)

25 (explaining that equitable tolling is warranted "when extraordinary circumstances

26 beyond the plaintiff's control made it impossible to file a claim on time" and proper

27 where "overwhelming evidence" demonstrated that complainant was "completely"

28 disabled during the relevant limitations period).

1    For these reasons, Plaintiff cannot demonstrate that his lengthy delay in filing

2    suit against any Defendant for conduct that occurred prior to August 10, 2017, was

3    reasonable and in good faith.  Therefore, the statute of limitations period is not

4    equitably tolled, and the claims referenced in Section IV.A.1. above should be

5    dismissed with prejudice as untimely.

6    **B.    <u>Insufficiently Pleaded Claims.</u>**

7    As discussed above, most of Plaintiff's claims are time-barred.  The

8    remainder of his claims, however, are also deficient for various other reasons; some

9    should be dismissed with prejudice and others should be dismissed without

10   prejudice.  These claims are as follows:

11       (1)    Deputy Phillips for (a) excessive force;

12       (3)    Deputy Bright for excessive force;

13       (4)    Deputy Maracine for (b) inhumane conditions of confinement;

14       (5)    Deputy Gilbert for inhumane conditions of confinement;

15       (7)    Deputy Gibbs for: (a) excessive force; and (b) deprivation of access to

16              the courts;

17       (14)   Captain Coppack for supervisory liability; and

18       (15)   The County for <u>Monell</u> liability based on each of the above claims

19              (some of which appear to be claims that were brought or could have

20              been brought in the 2017 Action).

21   **1.    Excessive Force Claim Against Deputy Phillips.**

22   The Due Process Clause of the Fourteenth Amendment protects a post-

23   arraignment pretrial detainee from the use of excessive force that amounts to

24   punishment.  <u>Graham v. Connor</u>, 490 U.S. 386, 395 n.10 (1989) (citing <u>Bell v.</u>

25   <u>Wolfish</u>, 441 U.S. 520, 535-39 (1979)).  To prove an excessive force claim under

26   § 1983, a pretrial detainee must show only that the "force purposely or knowingly

27   used against him was objectively unreasonable."  <u>Kingsley v. Hendrickson</u>, 576

28   U.S. 389, 396-97 (2015).  "A court must make this determination from the

18

1   perspective of a reasonable officer on the scene, including what the officer knew at

2   the time, not with the 20/20 vision of hindsight." Id.  "[O]bjective reasonableness

3   turns on the 'facts and circumstances of each particular case.' " Id. (quoting

4   Graham v. Connor, 490 U.S. at 396).

5          The right of a pretrial detainee to be free from punishment under the

6   Fourteenth Amendment may also be violated by sexual harassment or unwanted

7   sexual contact.  Vazquez v. Cty. of Kern, 949 F.3d 1153, 1163-64 (9th Cir. 2020)

8   The question is whether such conduct amounts to "punishment." Id.  To constitute

9   punishment, the conduct "must either significantly exceed, or be independent of,

10  the inherent discomforts of confinement" and have purpose of punishment rather

11  than a legitimate governmental interest.  Id. at 16 (internal quotations omitted)

12  (citing Denmery v. Arpaio, 378 F.3d 1020, 1029 (9th Cir. 2004))  Mere verbal

13  sexual  harassment, however, does not necessarily amount to punishment.  Gaut v.

14  Sunn, 810 F.2d 923, 925 (9th Cir. 1987) ("mere naked threat" does state a

15  cognizable § 1983 claim under the Eighth Amendment); Austin v. Williams, 367

16  F.3d 1167, 1171-72 (9th Cir. 2004) (upholding summary judgment dismissal of

17  Eighth Amendment claim where prison guard exposed himself to prisoner in

18  elevated, glass-enclosed control booth for no more than 30-40 seconds).  Plaintiff

19  must establish that the alleged sexual harassment was egregious, pervasive and/or

20  widespread in order to state a claim. See, e.g., Jordan v. Gardner, 986 F.2d 1521,

21  1525-31 (9th Cir. 1993) (en banc) (prison policy requiring male guards to conduct

22  body searches on female prisoners violated Eighth Amendment); Watson v. Jones,

23  980 F.2d 1165, 1165-66 (8th Cir. 1992) (alleged pat-down searches that consisted

24  of tickling and "a deliberate examination of the genital, anus, lower stomach and

25  thigh areas" created factual dispute as to violation of Eighth Amendment).

26         Plaintiff alleges that in November 2017, Deputy Phillips asked him for "a

27  blow job" in exchange for letting Plaintiff keep his file folder, but no sexual contact

28  occurred between Plaintiff and Deputy Phillips, and Plaintiff kept his file folder.

(TAC at 13.)  This single incident, which resulted in no actual physical contact, does not state a cognizable § 1983 claim for sexual harassment/excessive force and should be dismissed with prejudice.

## 2. Inhumane Conditions of Confinement Claims Against Deputies Maracine and Gilbert.

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994).  In assessing conditions of confinement for pretrial detainees, the Court considers whether the conditions amount to punishment, causing harm or disability significantly exceeding or independent of the inherent discomforts of confinement, or whether they merely result from some legitimate governmental purpose.  See Doe v. Kelly, 878 F.3d 710, 714, 720 (9th Cir. 2017).  The Court evaluates a pretrial detainee's Fourteenth Amendment claim under an objective deliberate indifference standard.  See Gordon v. County of Orange, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (applying objective standard to medical care claims and describing similar treatment afforded medical care and other conditions of confinement claims) (citing Kingsley v. Hendrickson, 576 U.S. 389, 400-01 (2015), and Castro v. County of Los Angeles, 833 F.3d 1060, 1070 (9th Cir. 2016)).  A pretrial detainee must demonstrate a defendant's acts or omissions were objectively unreasonable, and identify objective facts indicating the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that objective.  Kingsley, 576 U.S. at 397-98.

Plaintiff alleges that Deputies Maracine and Gilbert "went out of their way" to deny Plaintiff (1) commissary by "conveniently" losing his commissary slips and (2) exercise by writing Plaintiff up without justification.  (TAC at 14.)  Without more, these general and conclusory allegations do not state a claim.

With respect to Plaintiff's ability to purchase items at the commissary, there is no such Constitutional right.  See Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir.

1996) (prisoners have no constitutional right to purchase canteen products).
Accordingly, losing Plaintiff's commissary slips (whether intentional or not) cannot
be the basis of a § 1983 action against Deputies Maracine or Gilbert.  Plaintiff's
claim under this theory should be dismissed with prejudice.

Regarding denial of exercise, the TAC fails to state facts, beyond mere
conclusions and generalizations, that would establish that Deputies Maracine and
Gilbert's actions violated Plaintiff's constitutional right.  For example, Plaintiff
does not allege when[8] or how often Deputies Maracine and Gilbert denied him
exercise.  Nor does Plaintiff allege how much exercise, if any, he did receive.  See
Allen v. Sakai, 48 F.3d 1082, 1087-88 (9th Cir.1994) (Constitutional violation
found where prisoner in secured housing unit was allowed only forty-five minutes
of outdoor exercise per week for six weeks); Lopez v. Smith, 203 F.3d 1122, 1133
(9th Cir.2000) (deprivation of outdoor exercise for forty-five days constituted cruel
and unusual punishment to prisoner).  To the extent he was denied exercise in
response to write ups for rules violations, Plaintiff does not allege any facts about
the write ups showing why they were unjustified.  Fundamentally, Plaintiff does not
allege any more specific facts that would permit the Court to determine that this
conduct was objectively unreasonable and, therefore, must be dismissed with leave
to amend.

### 3.    Supervisory Liability Claim Against Captain Coppack.

Plaintiff asserts that Captain Coppack is liable for Plaintiff's alleged
constitutional injuries in his capacity as an OC Jail captain.  However, § 1983
liability cannot be predicated on a theory of *respondeat superior*, or vicarious
liability, which makes a supervisor liable for the wrongful acts of his subordinates
merely due to the supervisor's position.  See Taylor v. List, 880 F.2d 1040, 1045

---

[8] If this occurred before August 10, 2017, then these claims would be time-barred per the same analysis as in Section IV.A.

1    (9th Cir. 1989).  Instead, Plaintiff must allege facts demonstrating that Captain

2    Coppack was *personally* involved in Plaintiff's alleged constitutional deprivations.

3    Olivier v. Baca, 913 F.3d 852, 858 (9th Cir. 2019) ("For Olivier to state an

4    actionable claim against Baca in his individual capacity, he must show that Baca

5    was personally involved in his alleged constitutional deprivation by, for example,

6    acting, or failing to act, in a manner that was deliberately indifferent to Olivier's

7    constitutional rights."); Starr v. Baca, 652 F.3d 1202, 1221 (9th Cir. 2011) (a

8    supervisor is liable for subordinates' constitutional violations only "if the

9    supervisor participated in or directed the violations, or knew of the violations and

10   failed to act to prevent them").

11       The TAC does not allege any actions taken personally by Captain Coppack

12   that deprived Plaintiff of any federal right.  Merely asserting that Plaintiff sent

13   complaining letters about Deputy Phillips' November 2017 request for a "blow job"

14   to Captain Coppack, but that Captain Coppack did nothing in response does not

15   plausibly allege any personal involvement.  See, e.g., Talib v. Nicholas, No. CV 14-

16   5871-JAK DFM, 2014 WL 4181967, at *9 (C.D. Cal. Aug. 21, 2014); Black v.

17   Nevin, No. 2:09-CV-02004, 2011 WL 13854, at *3 (D. Nev. Jan. 3, 2011); Hollis v.

18   York, No. 1:09-CV-00463, 2010 WL 4053986, at *10 (E.D. Cal. Oct. 15, 2010).

19   Moreover, as discussed above, Deputy Phillips' crude request was not a

20   constitutional violation.  For these reasons, this claim should be dismissed with

21   prejudice.

22       **4.    Monell Claims Against the County.**

23       Section 1983 suits against local governments alleging constitutional rights

24   violations by government officials cannot rely solely on respondeat superior

25   liability.  Monell, 436 U.S. at 691; Whitaker v. Garcetti, 486 F.3d 572, 581 (9th Cir.

26   2007).  Instead, Plaintiff must establish that "the local government 'had a deliberate

27   policy, custom, or practice that was the 'moving force' behind the constitutional

28   violation [they] suffered.'"  Whitaker, 486 F.3d at 581 (quoting Galen v. City of

1  L.A., 477 F.3d 652, 667 (9th Cir. 2007)).

2          The doctrine of res judicata applies to § 1983 claims.  Hancock v. Pomazal,

3  416 F. App'x 639, 640 (9th Cir. 2011).  The principle of res judicata contains two

4  distinct branches: claim preclusion, commonly referred to as res judicata; and issue

5  preclusion, commonly referred to as collateral estoppel.  As explained by the Ninth

6  Circuit:

7          Res judicata encompasses two subsidiary doctrines, claim preclusion

8          and issue preclusion.  Under claim preclusion, a final judgment on the

9          merits of a claim bars subsequent litigation of that claim.  Claim

10         preclusion prevents litigation of all grounds for, or defenses to,

11         recovery that were previously available to the parties, regardless of

12         whether they were asserted or determined in the prior proceeding.

13         The related doctrine of issue preclusion, or collateral estoppel, bars

14         relitigation, even in an action on a different claim, of all issues of fact

15         or law that were actually litigated and necessarily decided in the prior

16         proceeding.

17  Americana Fabrics, Inc. v. L & L Textiles, Inc., 754 F.2d 1524, 1529 (9th Cir.

18  1985) (citations and footnote omitted).

19         In the 2017 Action, Plaintiff sued the County alleging the same or similar

20  injuries as alleged in the TAC, e.g., OC Jail staff engaging in retaliation, excessive

21  force, and medical neglect.  In May 2018, the Court granted summary judgment in

22  favor of the County, and that ruling was upheld on appeal.  (2017 Action, Dkts. 86,

23  97.)  Summary judgment is a final judgment on the merits for preclusion purposes.

24  Jackson v. Hayakawa, 605 F.2d 1121, 1125 n.3 (9th Cir. 1979); see In re

25  ThermaPure Inc., No. CV 13-4052 JVS, 2014 WL 12597331, at *4 (C.D. Cal. June

26  6, 2014) ("all of the requirements of collateral estoppel are clearly met in prior

27  partial summary judgment orders").  Plaintiff cannot re-allege claims against the

28  County that were alleged, or could have been alleged, and adjudicated in the 2017

23

Action.  See Stute v. City of Westport, 285 F. App'x 420, 421 (9th Cir. 2008) ("The district court properly granted summary judgment on the basis of res judicata because the undisputed evidence establishes that this lawsuit involves the same cause of action that was litigated in prior federal actions between the same parties and their privies, and those actions concluded in final judgments on the merits.")

In an attempt to allege new Monell claims, Plaintiff alleges that the County was complicit with and aware of the OCSD deputies' alleged violations of his constitutional rights.  (TAC at 24, 32.)  In Lytle v. Carl, 382 F.3d 978 (9th Cir. 2004), the Ninth Circuit stated that a ratification theory of Monell liability requires "a plaintiff to show that the 'authorized policymakers' approve a subordinate's decision and the basis for it ... The policymaker must have knowledge of the constitutional violation and actually approve of it."  Lytle, 382 F.3d at 987.  The TAC fails to allege such facts, but Plaintiff may be able to plead additional facts. Accordingly, his Monell claim against the County should be dismissed with leave to amend.  In amending, Plaintiff should not plead Monell claims against the County that were brought, or could not have been brought, in the 2017 Action.  He also should not plead Monell claims based on wrongdoing that occurred before August 10, 2017.

## C.    Additional Defects Under Rule 8

Federal Rule of Civil Procedure 8 requires a complaint to include: (1) "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief"; and (2) "a demand for the relief sought, which may include relief in the alternative or different types of relief."  Fed. R. Civ. P. 8(a)(2)-(3).  The reader must be able to "determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery."  McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996).

The TAC includes irrelevant allegations, is convoluted and disorganized, and often fails to include sufficient facts about what happened to Plaintiff and what each

individual Defendant did.  The TAC fails to comply with Rule 8, and the remaining claims against: (3) Deputy Bright for excessive force; and (7) Deputies Gibbs for: (a) excessive force and (b) deprivation of access to the courts should therefore be dismissed, but with leave to amend.

## V.

## RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Court issue an Order:

(1) approving and accepting this Report and Recommendation;

(2) dismissing the Complaint in its entirety;

(3) dismissing with prejudice and without leave to amend: (a) all claims against Deputy Phillips, Deputy Zalaya, Deputy Thornton, Nurse Ava, Kirk Wilkerson, Global Tel Link, Sergeant Wallewa, Sergeant Begosian, Captain D'Auria, Captain Coppack; (b) the interference with the right to self-representation claim against Deputy Maracine; (c) the inhumane conditions of confinement claims against Deputies Maracine and Gilbert based on denial of commissary; and (d) all claims against the County based on the claims identified in this Subsection.

(4) dismissing without prejudice and with leave to amend: (a) the excessive force claim against Deputy Bright ; (b) the inhumane conditions of confinement claims against Deputies Maracine and Gilbert based on denial of exercise; (d) the excessive force claim and access to courts claims against Deputy Gibbs; and (e) all claims against the County based on the claims identified in this Subsection.

If Plaintiff files a Fourth Amended Complaint that attempts to remedy the above-identified defects in the TAC, it should bear the docket number assigned to this case (8:21-cv-01670-JVS-KES), be labeled "Fourth Amended Complaint," and be complete in and of itself without reference to the previous complaints or any

other documents (except any documents that are attached to the Fourth Amended Complaint as exhibits).  Plaintiff may not simply add pages to the TAC, as he has done before.  The Fourth Amended Complaint may not include new defendants or claims other than those identified in Subsection (4), above.  Plaintiff is strongly admonished not to allege facts which are irrelevant to his surviving claims.  Instead, the Fourth Amended Complaint should concisely allege "who is being sued, for what relief, and on what theory, with enough detail to guide discovery."  McHenry, 84 F.3d at 1178.  In addition, Plaintiff's Fourth Amended Complaint shall not exceed 30 pages (not including exhibits), and he is strongly cautioned that failure to comply with the page limit may result in dismissal with prejudice.  See e.g., Bittaker v. Rushen, 978 F.2d 714 (1992) (upholding dismissal after plaintiff failed to comply with Federal Rule of Civil Procedure 8 and the court's 40-page limit); Sloan v. Comm'r of the Dep't of Corr. & Rehab., 2018 WL 3769382, No. 2:15-cv-1921 MCE AC (E.D. Cal. Aug. 9, 2018) (dismissing plaintiff's complaint after failure to comply with the 25-page limit the court had placed on plaintiff); Sameer v. Right Moves 4 U, 2018 WL 2318331, No. 1:17-cv-886 AWI-EPG (E.D. Cal. May 22, 2018) (dismissing plaintiff's complaint after failure to comply with 50-page limit).

DATED:  July 22, 2022

_Karen E. Scott_

_____
KAREN E. SCOTT
United States Magistrate Judge

## NOTICE

Reports and Recommendations are not appealable to the Court of Appeals but are subject to the right of any party to timely file objections as provided in the Federal Rules of Civil Procedure and the instructions attached to this Report.  This Report and any objections will be reviewed by the District Judge whose initials appear in the case docket number.

_____
FULL NAME

_____
COMMITTED NAME (if different)

_____
FULL ADDRESS INCLUDING NAME OF INSTITUTION

_____

_____
PRISON NUMBER (if applicable)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PLAINTIFF, | CASE NUMBER<br><br>_____<br>*To be supplied by the Clerk* |
| v. | **CIVIL RIGHTS COMPLAINT**<br>**PURSUANT TO** *(Check one)*<br>☐ 42 U.S.C. § 1983 |
| DEFENDANT(S). | ☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971) |

## A.   PREVIOUS LAWSUITS

1.   Have you brought any other lawsuits in a federal court while a prisoner:  ☐ Yes     ☐ No

2.   If your answer to "1." is yes, how many? _____

Describe the lawsuit in the space below.  (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

   a.  Parties to this previous lawsuit:

Plaintiff _____

_____

Defendants _____

_____

   b.  Court _____

_____

   c.  Docket or case number _____

   d.  Name of judge to whom case was assigned _____

   e.  Disposition (For example:  Was the case dismissed?  If so, what was the basis for dismissal?  Was it

appealed?  Is it still pending?) _____

   f.  Issues raised: _____

_____

_____

   g.  Approximate date of filing lawsuit: _____

   h.  Approximate date of disposition _____

## B.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

1.  Is there a grievance procedure available at the institution where the events relating to your current complaint occurred?  ☐ Yes    ☐ No

2.  Have you filed a grievance concerning the facts relating to your current complaint?  ☐ Yes    ☐ No

If your answer is no, explain why not _____

_____

_____

3.  Is the grievance procedure completed?  ☐ Yes    ☐ No

If your answer is no, explain why not _____

_____

4.  Please attach copies of papers related to the grievance procedure.

## C.  JURISDICTION

This complaint alleges that the civil rights of plaintiff _____

(print plaintiff's name)

who presently resides at _____,

(mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at

_____

(institution/city where violation occurred)

on (date or dates) _____, _____, _____.
                  (Claim I)          (Claim II)          (Claim III)

**NOTE**:    You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1.  Defendant _____ resides or works at
                (full name of first defendant)

       _____
       (full address of first defendant)

       _____
       (defendant's position and title, if any)

       The defendant is sued in his/her (Check one or both):  ☐ individual   ☐ official capacity.

       Explain how this defendant was acting under color of law:

       _____

       _____

2.  Defendant _____ resides or works at
                (full name of first defendant)

       _____
       (full address of first defendant)

       _____
       (defendant's position and title, if any)

       The defendant is sued in his/her (Check one or both):  ☐ individual   ☐ official capacity.

       Explain how this defendant was acting under color of law:

       _____

       _____

3.  Defendant _____ resides or works at
                (full name of first defendant)

       _____
       (full address of first defendant)

       _____
       (defendant's position and title, if any)

       The defendant is sued in his/her (Check one or both):  ☐ individual   ☐ official capacity.

       Explain how this defendant was acting under color of law:

       _____

       _____

4.   Defendant _____ resides or works at

                (full name of first defendant)

      _____

      (full address of first defendant)

      _____

      (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual  ☐ official capacity.

Explain how this defendant was acting under color of law:

_____

_____

5.   Defendant _____ resides or works at

                (full name of first defendant)

      _____

      (full address of first defendant)

      _____

      (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual  ☐ official capacity.

Explain how this defendant was acting under color of law:

_____

_____

**D.  CLAIMS\***

**CLAIM I**

The following civil right has been violated:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Supporting Facts:  Include all facts you consider important.  State the facts clearly, in your own words, and without citing legal authority or argument.  Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.*

**E. REQUEST FOR RELIEF**

I believe that I am entitled to the following specific relief:

_____

_____

_____

_____       _____
*(Date)*                                      *(Signature of Plaintiff)*

**CIVIL RIGHTS COMPLAINT**